WILLIAM R. GORDON, petitioner,

*v.*

FRANCES H. GORDON.

[Submitted and Decided December 3d, 1917.]

1. A wife involuntarily confined in an insane asylum as a lunatic cannot be guilty of desertion under the Divorce act of this state.

2. If she is so confined after her continuous desertion for two years, but before her husband's suit for divorce is begun, her involuntary confinement is a defence to the suit, since the desertion must have continued during two years preceding the suit.

3. It is the duty of the court of chancery to apply the law as distinctly laid down by the court of errors and appeals without hesitation or criticism; where two deliverances of that court cannot be reconciled or distinguished, this court shoudl follow the later statement when such statement has been recognized and accepted in subsequent decisions and declarations of the court of chancery.

4. *Myles* v. *Myles*, 77 *N. J. Eq.* 265, and *Hall* v. *Hall*, 65 *N. J. Eq.* 709, examined and compared.

On petition for divorce on the ground of desertion. Heard on bill, answer and proofs taken in open court.

*Mr. Edward P. Stout,* for the petitioner.

*Mr. Edward Maxson,* for the defendant.

STEVENSON, V. C.

1. In this case I find that the defendant was guilty of willful, continued and obstinate desertion of her husband for a period

of two years and over. Petitioner, however, did not promptly commence his suit after the defendant had been guilty of the complete matrimonial offence of desertion which would have entitled him to an absolute divorce if he had filed his petition in time. Some months passed by when without any break in the continuity of the desertion of the defendant with the characteristics necessary to make such desertion a cause of divorce, she (the defendant) became insane to such an extent as to be irresponsible for her actions, and was by due course of law committed as an involuntary patient to an insane asylum, where she remained insane and confined without regard to her will continuously until this suit was brought. Conditions had not changed when the cause came to a final hearing.

2. It is conceded that the mental condition of the defendant and her confinement without regard to her will in a lunatic asylum arrested the period of willful, continued and obstinate desertion which she had formerly initiated. She was not willfully absenting herself from her husband. She no longer had an opportunity to repent and become reconciled with her husband, and if she had the will to return to him she was physically restrained from carrying out such a purpose. A spouse in the situation of the defendant after she becomes a lunatic and is involuntarily confined in an asylum, cannot be guilty of desertion within the definition of our Divorce act. *Porter* v. *Porter*, *82 N. J. Eq. 400.* See *1 Bish. M. D. & S.* § *1761.*

3. In the case of *Myles* v. *Myles*, *77 N. J. Eq. 265* (court of errors and appeals, 1910), there is a very distinct and positive *dictum* in which the entire court apparently concur, to the effect that "the two years contemplated by the statute are of course those immediately preceding the filing of the petition." An examination of the opinion of Vice-Chancellor Emery, filed in the cause but not reported, and of the brief *per curiam* opinion of the court of errors and appeals above cited, which affirmed the decree advised by Vice-Chancellor Emery, shows distinctly, I think, that the only matter before either court for decision was whether or not it was established by the proofs that the separation of the spouses which had lasted for a period of twelve or thirteen years, was characterized by obstinacy on

the part of the defendant. The appellate court agreed with the court of chancery that the petitioner had failed to show this necessary fact. The particular period of desertion with respect to the commencement of the suit for divorce was not before either court for consideration. The deliverance of the court of errors and appeals above quoted was made merely because it was deemed possible that the vice-chancellor "regarded the first two years of the separation as the period to be examined," and the appellate court proceeded to express its dissent from such proposition in order "to avoid any misunderstanding" of the "affirmance of the decree."

There can be no doubt, I think, that the court of errors and appeals intended by their well-considered *dictum* to correct what possibly might be construed as a statement of divorce law made by way of *dictum* in the opinion of Vice-Chancellor Emery, which opinion in all other respects the higher court adopted.

It follows from the application of this novel principle of divorce law promulgated in the *Myles Case,* for which no authority is cited, that a spouse can never in New Jersey acquire an absolute right to a divorce on the ground of desertion until his petition is filed. The guilty spouse (the deserter), after three or four years of willful, continued and obstinate desertion, may, the day before the petition is filed against him, by repentance and *bona fide* offers of reconciliation, &c., destroy what would have been a right of the deserted spouse to an absolute divorce if he could only have got his petition on file two days earlier.

I see no escape from the conclusion that if the *dictum* in the *Myles Case* is to be logically applied, the continuity of the willful and obstinate desertion during the necessary period of two years is broken if the defendant becomes insane and irresponsible and is committed to an asylum before the suit for divorce is commenced, even though when insanity supervened there had been a completed period of two years of willful, continued and obstinate desertion.

In *Hall* v. *Hall, 53 Atl. Rep. 455, 459;* affirmed, *65 N. J. Eq. 709, 710,* Vice-Chancellor Pitney, in dealing with an offer

of reconciliation made by the deserting wife after two years of willful, continued and obstinate desertion, says (at *p. 459*):

"With regard to the writing of the love letter in May, 1900, that was two years after her desertion, and after the petitioner's right to a divorce on the ground of desertion had matured and become vested."

The decree advised by Vice-Chancellor Pitney was unanimously affirmed by the court of errors and appeals, and in the brief opinion of Mr. Chief-Justice Gummere we find the following statement:

"We concur not only in the conclusion reached by the Vice-Chancellor *but in the opinion rendered by him,* except that we find therein a somewhat inaccurate statement of a rule of divorce law which we think should not be passed without notice."

The opinion then proceeds to correct a statement of Vice-Chancellor Pitney which has no bearing upon the matter now in hand.

Thus the court of errors and appeals expressly adopts the opinion of Vice-Chancellor Pitney with a single exception, which need not be noticed, and thus approves the doctrine which until the decision of the *Myles Case* I think was regarded as settled beyond question, viz., that after two years of willful, continued and obstinate desertion the deserted spouse has a vested right to a divorce, can reject all offers of reconciliation, however sincere they may be, and notwithstanding that the deserting spouse after the two years of desertion became insane and was permanently confined in an asylum, file his petition and procure an absolute divorce.

. 4. I am unable to perceive any way by which the *dictum* of the court of errors and appeals in the *Myles Case* can be reconciled with the opinion adopted by the court of errors and appeals in the *Hall Case.* If the principle stated by Vice-Chancellor Pitney in the *Hall Case* and carefully endorsed by the court of errors and appeals is correct, then it would seem to follow that in the case at bar the defendant committed a complete matrimonial offence prior to her insanity, and that the petitioner has a vested right to a divorce although he has brought his suit some months after insanity and incarceration of the de-

fendant in an asylum have made it impossible that she could be continuously guilty of willful desertion for two years preceding the filing of the petition.

If the principle carefully announced, although by way of *dictum,* in the *Myles Case* is correct, I see no escape from the conclusion that the defendant never committed any matrimonial offence which under the laws of New Jersey at the present time entitles the petitioner to a divorce.

5. Assuming that both propositions laid down or adopted by the court of errors and appeals which we are considering are mere *dicta,* and that they are in conflict with each other, I am embarrassed in endeavoring to determine which is authoritative and final because of the fact that the later deliverance does not in any way refer to the earlier. In view of what I think is the unanimous opinion of text writers of repute and courts in other jurisdictions, I incline to think that, if this case were to be decided without the aid of any further authority in New Jersey subsequent to the *Myles Case,* the court of chancery might properly apply the principle laid down in the *Hall Case* until the court of errors and appeals should be further heard from. It may be well to state some of the reasons for this view.

(1) It will be observed that our Divorce act makes no distinction between the two matrimonial offences which constitute causes of absolute divorce. The statute declares that "divorces from the bond of matrimony may be decreed for the following causes:

"I. Adultery by either of the parties.

"II. Willful, continued and obstinate desertion for the term of two years."

The statute does not prescribe that the period of two years of desertion must be the two years immediately preceding the filing of the petition: this proviso is added by the rule laid down in the *Myles Case.* The provision in section 6 pertaining to jurisdiction that in desertion cases one of the parties must be resident in New Jersey for two years next preceding the commencement of the action, plainly does not warrant the inference that the term of two years of desertion which constitutes

the ground of divorce, may not have ended long before the commencement of the suit.

As will appear hereafter in considering the *Koch Case, infra,* sections 6 and 7 of the Divorce act refer in terms to causes of action for divorce upon both grounds, desertion and adultery, as arising not only before suit is brought in New Jersey, but before the petitioner became a resident of the State of New Jersey.

(2) The statute, it seems to me, makes no distinction as to the remedy between the offence of adultery and the offence of willful, continued and obstinate desertion for two years. The offences of course are quite different in their nature. Condonation may be more easily obtained in one case than in the other. The moral duty to condone may more frequently exist in one case than in the other. The statute, however, as I read it, seems to place these two complete matrimonial offences on a par in respect to the rights and remedies which are accorded to the injured spouse.

(3) The text writers I think all agree that after the statutory period of desertion is completed, the deserter cannot by any course of conduct indicating repentance and desire to terminate the desertion, impair in any way the legal effect of the matrimonial offence which he has committed. Mr. Bishop says (*1 M. D. & S.* § *1775*) :

"When the desertion has continued the statutory number of years, the deserted party may rely on his acquired right and refuse to renew cohabitation. The refusal will not bar the divorce to which he has already become entitled."

The authorities in this country and Great Britain are cited in a note.

In *1 Nels. D. & S.* §§ *73-75,* the authorities are cited for the doctrine that an offer to return "must be made within the statutory period." In section 75 the author says:

"The door of repentance and return must be kept open during that period [the statutory period], but after the statutory time has elapsed the injured party has a cause for divorce. If such party refuses to renew cohabitation it is not desertion. For to renew cohabitation is to condone the offence and the law does not enforce condonation. This refusal of an offer to return will not bar a divorce to which the party is already entitled."

The American and English cases sustaining these propositions are cited in a note.

The same principles are announced in *9 Am. & Eng. Encyc. 775* (see cases cited in note 3), and *14 Cyc. 620* (see cases cited in note 91).

(4) I have found no authority earlier than the *Myles Case* in this country or in England contained in any judicial opinion or text book, which makes the slightest distinction in respect of remedies between the matrimonial offence of adultery and the matrimonial offence of desertion, after the desertion has continued for the period prescribed by statute. I find no intimation that statutes similar to ours not only prescribe the period of desertion but prescribe its continuance up to the time of commencing the suit for divorce on account thereof. The two offences of course differ: in the case of desertion two years of continuous misconduct on the part of the deserting spouse (which period is liable at any time to be arrested by a variety of courses), are necessary to constitute the complete offence, but after the offence of desertion has been once completed I have not discovered any suggestion prior to the *Myles Case* that the injured spouse has not the same vested right to a divorce which he would have had if the matrimonial offence had been adultery. If it may be said that the foregoing statements contain a *petitio principii* because they assume that the matrimonial offence of desertion as defined by our statute may be completed before the suit is commenced, the propositions may be recast so as to make them affirm that there is no such matrimonial offence defined by our statute as willful, continued and obstinate desertion for two years immediately preceding the commencement of a suit for divorce on account of such offence. Our statute in the same section and in one sentence names two offences which are grounds for divorce. One of these offences is fully defined by a single word, and the other by a single word with four qualifications. If the legislature had intended to add a fifth qualification which has been added by the *dictum* in the *Myles Case,* it would seem probable that it would have done so especially in view of the far-reaching effects of adding this qualification in large numbers of cases.

(5) The *dictum* in the *Myles Case* does not seem to fit very accurately into our system of divorce law so far expounded by our courts. In 1911, over three years after our present Divorce act went into effect, Vice-Chancellor Emery in the case of *Koch* v. *Koch, 79 N. J. Eq. 24,* decided that where the period of desertion began in New York, but, before the expiration of two years, the injured spouse became a resident of New Jersey, and, the desertion continuing, subsequently after two years commenced a suit for divorce in this state, no cause of action for desertion arose until the entire two years from the origin of the desertion had elapsed, and that the only cause of action for desertion therefore arose in New Jersey. The soundness of this view has never been questioned. But the Vice-Chancellor proceeded in his reasoning upon the assumption that if there had been two years of desertion while the petitioner remained domiciled in New York, the continuance of the desertion in New Jersey for two years would not constitute a separate cause of action for divorce arising in New Jersey. No period of desertion is a cause of action for absolute divorce in New York. A cause of action for a limited divorce therefore arising in New York, prevents a cause of action for absolute divorce from subsequently arising in New Jersey. Several decisions (unreported) of two vice-chancellors directly contrary to this view had been rendered, of which decisions, however, Vice-Chancellor Emery was not aware. The vice-chancellor's *dictum,* however, has been accepted as law by the court of chancery in subsequent cases, and has recently been approved by the court of errors and appeals. *Flynn* v. *Flynn, 83 N. J. Eq. 690.*

Thus it would seem that if a spouse deserted in another state remains a resident there two years, and then becomes a resident of New Jersey and remains such resident for two years, and then commences a suit for divorce, the two years to be examined are not "those immediately preceding the filing of the petition," but those which immediately followed the separation in the foreign state, or immediately preceded the departure of the deserted spouse from the foreign state. If during the whole period of separation the injured spouse (the petitioner) has been a resident of New Jersey according to the *dictum* in the

*Myles Case,* the two years to be examined are "those imme-diately preceding the filing of the petition," and no cause of action arises on the ground of desertion until the petitioner gets his petition on file. If, however, during the first two years of the separation the petitioner was domiciled in a foreign state, he or she may after two years of residence in New Jersey obtain a divorce in this state of such a character as would be obtained in case the petitioner had remained in her former domicile and had brought suit there. In the case put the spouse emigrating from Pennsylvania would be entitled to an abso-lute divorce, while the spouse emigrating from New York would be entitled only to a limited divorce. If, after two years of separation at the matrimonial domicile in a foreign state, one of the spouses becomes a resident of New Jersey, and after two years of such residence files a petition for divorce, the first period for examination manifestly is the period of years of separation in the foreign state immediately preceding the es-tablishment of the residence in New Jersey If this examina-tion discloses two years of willful, continued and obstinate de-sertion, then the court of chancery of New Jersey may grant only such divorce as the foreign state could grant under its laws. If, however, the separation at the start was not a willful or an obstinate desertion by the defendant, but became such after the emigration to New Jersey or within two years prior to such emigration, then no cause of action arose in the foreign state, and the period to be examined under the *Myles Case* is the two years immediately preceding the filing of the petition, and the divorce obtained will be such as is defined by the New Jersey law.

In case the deserted spouse remained resident in the foreign state for the period of two years from the date of the desertion, and then moved to New Jersey, the question arises whether *bona fide* offers of reconciliation on the part of the guilty spouse or his insanity could possibly have any effect upon the right which the injured spouse acquired to obtain a divorce, absolute or limited, as the case might be, on account of the complete matrimonial offence which arose in the foreign state.

The *dictum* in the *Myles Case* cannot, I think, be reconciled

with the doctrine of the *Koch Case* which the court of errors and appeals apparently approved in the *Flynn Case* four years after the *Myles Case* was decided. While the doctrine of the *Koch Case* has not been discussed in any opinion by a judge of our court of last resort, and possibly that court has not considered its peculiar application to certain cases, and may hereafter strictly limit its authority as a precedent, nevertheless it now stands as law in this court, and it seems to follow that as between the conflicting *dicta* in the *Hall* and *Myles Cases* this court should accept and apply that *dictum* which is not inconsistent with the law of the *Koch* and *Flynn Cases*.

(6) It is, I think, the settled practice to permit a defendant in a divorce suit to file a cross-petition praying for an absolute divorce on the ground of desertion, although the period of two years had not expired when the original petition was filed, the cross-petition being considered in many respects an independent suit. (See laws of 1916, chapter 57, page 102). Suppose a wife after two years of separation from her husband is about to sue him for an absolute divorce on the ground of desertion, but before she gets her petition on file she is sued by her husband in good faith for a divorce on the ground of adultery. The commencement of the husband's suit makes it improper that the parties should live together and suspends the period of desertion. Recognizing the *dictum* in the *Myles Case*, can the wife succeed in her cross-suit on the theory "that the two years contemplated by the statute are * * * those immediately preceding the filing of the petition" of the husband, and not those immediately preceding the filing of the cross-petition? A logical application of the principle laid down in the *Myles dictum* would seem to abolish all cross-suits for divorce on the grounds of desertion where the original suit was brought in good faith.

6. The fact that in some cases the original status can be more completely restored after the offence of desertion for two years has been committed, than where the offence of adultery has been committed, seems to my mind to bear only upon the moral obligation to condone. The legislature has defined with accuracy two distinct matrimonial offences, either of which is a

ground for absolute divorce. Under the statute the two offences seem to be equally heinous, giving grounds to the injured party for precisely the same remedies. There are strong grounds for arguing, as in fact it has often been argued, that two years of desertion effect a more complete disruption of the marriage state in scores of cases than is effected by a single act of adultery. A husband who willfully deserts his wife and leaves her for two years to support herself and her children by her labor, has committed, it seems to me, about the highest possible crime affecting the marriage relation.

7. It has been suggested that the form of allegation charging desertion which has usually been employed in divorce cases, indicates what has been generally thought as the particular two years under investigation. Petitions for divorce on the ground of desertion usually allege the date when the separation occurred, and in the great majority of cases the parties in fact have not come together since this final separation, the date of which may have been two years, three years or ten years before the commencement of the suit. The natural method of charging the defendant with desertion is to allege that he deserted the petitioner at the date named, and then proceed: "ever since which time and for more than two years last past said defendant has willfully, continuedly and obstinately deserted" the petitioner. *Bidd. N. J. Div. Pr. 186 et seq.* Under this form of allegation prior to the Myles opinion the case was established when desertion having the necessary characteristics was proved to have existed during any period of two years included in the allegation—the offence not having been condoned. In many, perhaps in most cases, the last two years prior to the filing of the petition are more readily than any earlier period proved to have been years of willful and obstinate desertion. The separation at the start in many cases cannot be shown to have the elements of willfulness and obstinacy. A separation, innocent in its origin, at a later time, which sometimes cannot be definitely fixed except within limits, often becomes a willful desertion. If, as the matter was understood prior to the *Myles Case,* the guilty spouse after the complete offence of desertion for two years had been committed, repented and desired to return,

or became insane, and it thus appeared that some time prior to the commencement of the suit he had ceased to be a willful and obstinate deserter, most accurate pleaders, I think, would vary the phraseology so as to make it conform with the truth. If a spouse domiciled in Pennsylvania after two years of willful, continued and obstinate desertion by the other spouse, becomes a resident of New Jersey, and after a further period of two years of such residence brings a suit for an absolute divorce on the ground of desertion, having in view the doctrine of the *Koch Case,* it would plainly be improper to follow the form of allegation above quoted. In such case, as we have seen, "the two years contemplated by the statute" are not "those immediately preceding the filing of the petition," but those ending at least two years before the petition was filed. *Koch* v. *Koch, supra; Flynn* v. *Flynn, supra.* In such case the petition alleges that the petitioner was resident in the foreign state when the cause of action arose on account of which he brings his suit for a divorce, and alleges the removal of the petitioner to the State of New Jersey and residence there for two years next preceding the commencement of the action. The petition also sets forth the foreign law and prays for a divorce on account of the two years of desertion in the foreign state. See *Bidd. N. J. Div. Pr. 193, form 13.*

8. Thus it seems to me to be beyond question that in an important class of desertion cases our statute expressly recognizes that a complete cause of action may arise on account of two years of willful, continued and obstinate desertion, which period of desertion terminated at least two years before the petition for divorce was filed. It seems somewhat incongruous that if a petitioner for divorce proves willful, continued and obstinate desertion for a period of four or five years, whether the earlier half or the later half of the period constitutes the subject-matter of investigation as the matrimonial offence warranting a divorce under New Jersey law, depends on whether the petitioner became a resident of New Jersey before or after the first two years of the period expired.

9. As to the suggestion that after two years of willful, continued and obstinate desertion reconciliation may intervene be-

fore suit is commenced, and destroy any rights to a divorce founded upon the prior desertion, it would seem to be sufficient to point out that this is merely condonation, and that condonation is always possible after a complete matrimonial offence entitling the injured spouse to a divorce has been committed. Petitions in adultery cases often allege the act at a time, months or even years prior to the commencement of the suit. Cases have occurred where a husband has been shown to have been cohabitating with his wife while he was prosecuting a suit for divorce against her. Whether the complete matrimonial offence be adultery or desertion for two years, some period of time always intervenes between the commission of the offence and the institution of a suit for divorce, and during that period condonation is always possible. The possibility practically in all cases, and the high degree of probability in some cases, that the matrimonial offence, whether it be adultery or desertion, has been condoned, has no relation, it seems to me, to the ascertainment of the nature and definition of either of these two offences which constitute causes for absolute divorce at the election of the injured party. It may be noted that the form of petition uniformly employed in adultery cases does not deny condonation. Condonation is a defence to be set up in the defendant's answer and proved by him.

10. If the question to be decided in this case were to be decided solely with reference to the authority of the conflicting *dicta* in the *Hall* and *Myles Cases,* this court, it seems to me, would be at liberty to adopt the earlier *dictum,* supported, as I think it is, by all prior authorities, rather than the later *dictum,* which, so far I know, is supported by no prior authority. The principle, however, laid down in the *Myles Case* has been recognized as a correct statement of the law by Vice-Chancellor Backes in the case of *Getz* v. *Getz, 81 N. J. Eq. 465,* and has been applied by Vice-Chancellor Leaming in *Lake* v. *Lake, 89 Atl. Rep. 534.* In the last-mentioned case the principle enunciated in the *Myles Case* is accepted as the established law of the state. Two years of willful, continued and obstinate desertion having been established by a former decree between the parties, the vice-chancellor, following the rule enunciated in the *dictum* in the

*Myles Case,* examined the character of the separation for the two years immediately preceding the commencement of the suit, and finding that there had been no change in the character of such separation, advised a decree *nisi.* Of course, it is the duty of the court of chancery to apply the law as distinctly laid down by the court of errors and appeals without hesitation or criticism. Only our court of last resort may correct its authoritative statement of the law. The difficulty in this case arises from the fact that we have two conflicting statements coming from our court of last resort, and the later statement in no way referring to or recognizing the former statement. Although in such a situation this court might, as I have intimated, elect to be guided by the earlier statement of the law, such a course at present does not seem to be proper in view of the decisions and declarations of the court of chancery since the *Myles Case* was decided.

I conclude, therefore, that it is my duty to follow and apply to this case the latest statement of the law coming from our court of last resort, such statement having been recognized and accepted as a part of our Divorce law in the decisions of the court of chancery above cited. As between the petitioner in this case and the defendant who defends by a guardian appointed by the chancellor, if the petitioner is to obtain an absolute divorce, I think it should be after a decision to that effect by the court of errors and appeals.

A decree dismissing the petition will be advised.

The foregoing opinion will be filed because I am notified that the petitioner is about to take an appeal. The substance of the opinion was stated orally to counsel, and the opinion was written before the case of *Orens* v. *Orens, 102 Atl. Rep. 436 (88 N. J. Eq. 29),* was reported. If the opinion in the *Orens Case* had been before me at the hearing, this opinion would have consisted of a few lines citing the authorities. After some hesitation I have concluded to file my opinion in its present form, inasmuch as I think counsel have a right to have it accord with my oral deliverance.