WILLIAM R. GORDON, petitioner-appellant,

*v.*

FRANCES E. GORDON, defendant-respondent.

[Decided November 18th, 1918.]

1. Where a wife who is the defendant in a divorce suit has become insane within two years after deserting her husband, her separation from him during the period of her insanity is not willful, continued and obstinate within the meaning of the Divorce act.

2. A petitioner who seeks a divorce upon the ground of desertion must prove his case, and all uncertainties of fact should be resolved against him.

3. When the two year period of desertion fixed by the statute has once elapsed the desertion becomes permanently established; the benefit given by the statute to the spouse offended against has become vested: and he or she can never thereafter be deprived of that benefit—of his or her right to a divorce—except by his or her own act.

4. *Myles* v. *Myles*, 77 *N. J. Eq.* 265, explained.

On appeal from a decree in chancery advised by Vice-Chancellor Stevenson, reported in *88 N. J. Eq.* 436.

*Mr. Edward P. Stout,* for the appellant.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

William R. Gordon, the present appellant, filed a petition in the court of chancery seeking a divorce from his wife upon the ground of desertion; the charge in the petition being that "the defendant deserted petitioner in the month of November, 1909, ever since which time, and for more than two years last past, defendant has willfully, continuedly and obstinately deserted your petitioner." The learned vice-chancellor found as a fact that the

defendant was guilty of willful, continued and obstinate desertion of her husband for a period of two years from the date when she left his home in November, 1909, but refused the divorce for the reason that, after the expiration of the statutory period, and in November, 1912, the defendant had become insane to such an extent as to be irresponsible for her actions, and had continued in that mental condition up to the time of the filing of the petition, some four years later. He based his decision upon what he understood to be the doctrine laid down by this court in the case of *Myles* v. *Myles, 77 N. J. Eq. 265,* that "the two years contemplated by the statute are those immediately preceding the filing of the petition;" mistakenly considering that under this doctrine the right of the petitioner to a divorce was brought to an end by the insanity of the defendant, that being of such a character as to render her irresponsible for her actions, and, therefore, as he expresses it, "putting a period to her willful, continued and obstinate desertion."

Our examination of the proofs in this case leads us to the conclusion that the learned vice-chancellor was in error as to his finding of fact; that is to say, that the proofs fail to show that the wife was guilty of a willful, continued and obstinate desertion of her husband for the full period of two years after its commencement in November, 1909. According to the petitioner's own story, told upon the witness-stand, his wife became irrational as early as June, 1910; and his statement was based upon his personal observation of her during a visit which he made upon her at that time, while she was staying with her aunt. Apparently her mental derangement became more pronounced as time went on, for, during the fall of 1910, or earlier, she was confined as an insane patient at the state hospital at Centre Islip, Long Island, on the application of her brother. Just when her commitment occurred does not appear, but she remained at this institution until October, 1911. By that time her mental condition had improved, and the petitioner removed her from the asylum and took her to her father's home (why he did not take her to his own home he fails to disclose). She remained in her father's home for about a month, and then went to her mother at Landing,

New Jersey, and remained with her until November, 1912. On the 5th of that month she was taken to the Morris Plains Asylum. At that time, according to the testimony of Dr. Evans, the medical superintendent of the asylum, she was suffering from mental disorder, talking incessantly and incoherently, and apparently entirely irrational. Her condition from that time until the trial of this cause exhibited no improvement, and she has ever since remained an inmate at the asylum.

Assuming that the wife's abnormal mental condition, as observed by the petitioner in June, 1910, was not of such a character as to destroy her free agency, it cannot be doubted, we think, that when she was taken to the insane asylum at Centre Islip, and confined there, her separation from her husband ceased to be "willful, continued and obstinate," within the meaning of our Divorce act. *Porter* v. *Porter, 82 N. J. Eq. 400,* and cases cited. Up to the time of her discharge from that institution, in October, 1911, therefore, only the period of time intervening between her leaving her husband's home (in November, 1909) and her commitment (in the fall of 1910) can be included within the two years specified in the statute. Just how long that period was is not shown by the testimony. The burden was upon the petitioner to prove his case, and all uncertainties of fact should be resolved against him. This being so, it should be presumed that she was confined in this asylum at least as early as September, and on this theory ten months only of the statutory period had elapsed when she was discharged from her confinement in October, 1911. Thirteen months elapsed between the time of that discharge and her commitment to the Morris Plains Asylum; and, even, if it be considered that during the whole of that time and up to the very day when she was taken there, she remained a free agent, responsible for her conduct, and that her willful desertion persisted, the statutory two years has not been covered; for, of course, as has already been stated with relation to her earlier confinement, she ceased to be a free agent when she was committed to the Morris Plains Asylum, and has never since had an opportunity to repent her desertion and return to her husband.

The petitioner having failed to prove a desertion of two years on the part of his wife, a decree of divorce was properly denied him.

We might very well leave the case here, but, as the learned vice-chancellor has misunderstood the principle intended to be laid down by this court in the case of *Myles* v. *Myles, supra* (presumably, because of our unfortunate failure to express our thought in clear and unambiguous words), it seems advisable that we should restate our view, so that, not only judges of inferior tribunals, but the bar of the state may not longer be left in uncertainty as to the doctrine there intended to be exploited. What we said in that case was that "the two years' duration contemplated by the statute are those immediately preceding the filing of the petition; and that this is so is plain from the fact that if the petition left a hiatus between the end of the period and the date of the filing of the petition, such hiatus might readily represent a complete reconciliation and reunition of the parties that would entirely destroy any right to a divorce arising out of a previous desertion." What we intended to express was that, no matter how long the period of desertion had existed beyond the statutory two years preceding the filing of the petition, unless the desertion had continued up to the time of such filing the injured spouse could take no benefit from the statute. But, in our view, when the two years' period has once elapsed the desertion becomes permanently established, and its character continues until the filing of the petition, unless it is sooner brought to an end by the act of the injured husband or wife. During the whole of the two years immediately following the act of desertion the offending spouse is offered an opportunity of repenting of his or her sin, and may put an end to the running of the statute by exhibiting such repentance to his or her wife or husband, and offering in good faith to return to the deserted home and to renew cohabitation. But if he or she declines to take advantage of the opportunity to repent afforded by the statute, and persists in the desertion for the full period of two years, the right to return has gone, the hour of repentance has passed, the benefit given by the statute to the spouse offended against has become vested and

he or she can never thereafter be deprived of that benefit—of his or her right to a divorce—except by his or her own act. Repentance by the sinner, offers of return by him or her, are then of no avail. Not even the fact that the offending spouse, after the termination of the two years' period, has ceased to be a free agent by reason of mental aberration, or from any other cause, can deprive the injured spouse of that vested right. It is absolute and unassailable.

The decree under review will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.