MARY E. ADLER, petitioner,

*v.*

SIDNEY J. ADLER, defendant.

[Decided May 12th, 1932.]

*Mr. Leonard H. Savadove,* for the petitioner.

BUCHANAN, V. C.

This is a petition for divorce for the cause of desertion. To an adverse report by the special master, the petitioner excepts, and also asks leave to amend.

The proofs before the master amply established the following facts—and the master so found:

The parties were married in 1899, moved to this state in 1902, establishing and maintaining a *bona fide* residence here until January, 1908, when defendant deserted the petitioner and left the state; and the desertion has continued ever since. The petitioner continued to maintain her residence here for some nine years after the husband left her; in 1917 she gave up that residence and moved out of the state; in 1927 she returned to this state and established a *bona fide* residence here which she has ever since continuously maintained. The petition was filed in 1931.

Defendant, being a non-resident, service was made by publication and notice.

The master found that the desertion commenced in January, 1908, and was complete in January, 1910; that the cause of action therefore arose in January, 1910; that when the cause of action arose the petitioner was a *bona fide* resident of this state, but had not continued so to be down to the time of the commencement of the suit. He was of the opinion that because of the latter fact the court had no jurisdiction to grant decree of divorce. It is deemed that this opinion is erroneous.

The Divorce act provides that this court may grant an absolute divorce for the cause (*inter alia*) of "willful, continued and obstinate desertion for the term of two years" (*P. L. 1907 p. 475* §§ *2, 4*), assuming of course that the court has acquired jurisdiction to pronounce such decree in the particular case. Sections 6 and 7 of that act, set forth the requirements which must be met in order that this court shall have jurisdiction to hear and pronounce decree on the merits in particular cases.

Section 6 deals with those cases in which jurisdiction may be acquired by personal service of process upon the defendant within this state; section 7 sets forth those cases in which (and the method by which) jurisdiction may be acquired notwithstanding the impossibility of personal service within the state. Inasmuch as such personal service was not had in the instant case, it is only with section 7 that we are directly, or at first, concerned.

That section provides in substance that jurisdiction may be acquired by publication in any given case, if (subsection a) in that case the petitioner was a *bona fide* resident of New Jersey at the time the cause of action sued on arose and has continued to be such resident down to the commencement of the suit, with a further proviso that if the suit be for any cause other than adultery the petitioner must have been such resident for the two years next preceding the commencement of suit; or if (subsection b) subsequent to the arising of the cause of action, the petitioner has become a *bona fide* resident of New Jersey and has continued so to be for at least two years next preceding the commencement of the suit, and the suit is for a cause of action which was a valid ground for divorce at the time it arose, in the jurisdiction in which petitioner then resided.

The proofs show that the husband left the petitioner, with intent to desert, in January, 1908, at which time both parties were (and for several years had been), *bona fide* residents of this state, and that his desertion had continued ever since. The master was correct, therefore, in finding that a cause of action under our statute had arisen in January, 1910, at the completion of the first two years of the desertion.

The present petitioner was a *bona fide* resident of New Jersey at the time this cause of action arose (both at the inception of desertion and continuously until it was complete two years thereafter) ; she was also such resident at the commencement of suit and for two years then next preceding; but she had not been such resident *continuously* from the time the cause of action arose down to the commencement of suit. The latter is one of the express requirements under subsection (a) of section 7; hence the circumstances of petitioner's case are not such as permit the acquirement of jurisdiction by publication under that subsection.

She resided in New Jersey before and during and after the desertion period; she was such resident at the time the cause of action arose; she gave up such residence thereafter, but again became such resident and remained so continuously from 1927 to the commencement of suit in 1931 (a period

greater than two years) ; her suit is for the cause of willful, continued and obstinate desertion for two years, and this was, at the time her cause of action arose (1908 to 1910), recognized as a valid ground for divorce in the jurisdiction (New Jersey) in which she resided at that time.

The circumstances of her case therefore come quite within the express provisions of subsection (b) of section 7.

The two subsections, (a) and (b), are clearly alternative. Jurisdiction may be acquired by publication in cases where the circumstances come within the provisions of subsection (a) or in cases where the circumstances come within the provisions of subsection (b). There is no general provision, express or implied, that where the circumstances of a given case fall within the provisions of one subsection, nevertheless jurisdiction shall not be acquired by publication if some, but not all, of the circumstances fall also within the provisions of the other subsection.

Specifically, there is no provision in the statute (unless it is to be implied) that jurisdiction may not be acquired (by publication) over a case coming entirely within the provisions of subsection (b) if it also appears that the petitioner was a resident of this state at the time the cause of action arose.

As has been said, the circumstances of petitioner's case come clearly within the express provisions of subsection (b). In order to exclude the case from the operation of that section, it must be altered to read as follows: "When, *at the time the cause of action arose petitioner was not a resident of this state,* but since the cause of action arose has become, and," &c. The legislature did not write the italicized words into the statute: it is not perceived that any judicial interpolation thereof is either required or justifiable.

It will be remembered that our Divorce act was framed as a uniform act to be adopted by the several states, and the main purpose intended to be accomplished thereby was the remedying of the evils of "migratory divorces." *Koch* v. *Koch, 79 N. J. Eq. 24* (at *p. 29*) ; *80 Atl. Rep. 113; Stephenson* v. *Stephenson, 102 N. J. Eq. 50* (at *p. 54, 55*) ;

*139 Atl. Rep. 721.* Clearly, however, the instant case in no wise can be classified as a case of migratory divorce such as the act was intended to prevent. The matrimonial domicile was here, the desertion began here, the injured wife remained here after the guilty husband had left New Jersey for much longer than the completion of the two-year desertion period. The case is in all respects one in respect to which no objection could be made on broad general grounds, against suit for divorce being brought and maintained in the New Jersey court. And if the wife had brought her suit at any time before giving up her residence in New Jersey, she would clearly have been entitled to decree.

Because of the interruption of her residence in New Jersey she cannot now maintain her suit under subsection (a). But the statute does not limit relief alone to cases coming within subsection (a); it extends relief in addition to cases coming within subsection (b), and her case comes within the language thereof. To say that it is to be implied that her case was not intended to come within the provisions of subsection (b) is to say that the legislature while extending relief under certain conditions to a suitor whose cause of action arose in a foreign state and who was not a resident of New Jersey at the time, did not intend to extend the same relief to one whose cause of action arose in New Jersey and who was then a resident of New Jersey. This is so highly improbable as completely to negative the possibility of the raising of the suggested implication.

The act is not one to be construed with any idea of restricting its operation within the narrowest possible limits; it is to be "liberally and broadly construed to carry out its spirit, not beyond, but within the general sense of the language employed." *Stephenson* v. *Stephenson, supra* (at *p. 56*).

The special master's conclusion that jurisdiction in the instant case is not authorized by subsection (b) has apparently been quite widely shared. This is probably the outcome of the views expressed by the late Advisory Master Biddle (*Biddle Div. Prac.* (*2d ed.*) *103*), to the effect that the contrary interpretation would be "using subsection (b) to de-

feat every case in which 'continued' residence would be of any importance." Such a view obviously rests upon the assumption that the legislature deemed the matter of "continued" residence a matter of some particular and essential importance. It will be found that such assumption is scarcely justified, when the statute is considered as a whole and in the light of its purposes, history and circumstances.

As has already been mentioned, this statute is not local to New Jersey; it was framed as a "uniform" act with the view that it should and would be adopted generally by all or most of the states in the union, in order so far as possible to make the law as to divorce uniform throughout the nation. The provisions of the law as to divorce, in the several states, were widely at variance, particularly as to the matters which were deemed causes for divorce and as to the requirements of residence and jurisdiction.

It will be observed that the statute is divided into seven distinct parts each dealing with separate subjects. The second part deals with the subject of causes for divorce; the third part (including the sections now under consideration) deals with the subject of jurisdiction. The framers of the act undoubtedly had in mind that (as the result in fact has proved) many states would adopt the act in general but that individual states would make changes in some particulars— especially in the matter of what should be recognized as causes for divorce. The public policies of the several states varied widely in this behalf, and still do: at least one state recognizes no cause for absolute divorce whatever, and others recognize one or more of a rather numerous list, including adultery, bigamy, desertion, cruelty, insanity, conviction of crime, habitual drunkenness and others. The language of that part of the act dealing with jurisdiction was therefore presumably framed with the intent and purpose that it might be adopted unchanged by states which adopted varying causes for divorce, and that it should be apt and effective to accomplish the desired results as to jurisdiction, irrespective of what provisions might be adopted by the particular state as to causes for divorce.

That such was indeed the fact expressly appears in the *"Report of the Commissioners* appointed to attend the Uniform Divorce Law Congress as Delegates from the State of New Jersey," submitted to the governor in 1907. The statute as drafted by that congress included six causes for absolute divorce—of which only two were adopted by our legislature, and a third was adopted some years later. The draft provisions as to jurisdiction were adopted by this state without change.

It will be realized then, that the language of sections 6 and 7 was not framed with the idea that it applied only to a statute containing the identical sections 2 and 3 as they appear in our statute, but with the idea that it applied equally to statutes containing additional or different grounds for divorce—and that indeed several states which adopted desertion as a ground might all of them differ as to the period of time or other factors necessary to constitute such desertion.

It would seem probable that it was the overlooking of these considerations which led to a part of Mr. Biddle's difficulty —and led also to the confusion which developed in the earlier New Jersey decisions as to the two-year desertion period and the two-year residence period—see for instance *Gordon* v. *Gordon, 88 N. J. Eq. 436; 103 Atl. Rep. 31*, a confusion which could not well have arisen if the act as adopted in this state had had (as it might easily have had) a one-year desertion period instead of a two-year period, as a cause for absolute divorce, and one or two other causes in addition to adultery and desertion.

Part 3 of the act, dealing separately with the whole subject of jurisdiction, divides the cases first into the two general classes (sections 6 and 7) of jurisdiction by personal service and jurisdiction by publication—a natural classification. Another classification, equally important and equally natural was the division between those cases (a) in which everyone would agree that the state should have jurisdiction, and those (b) as to which controversy and diversity of provision then existed. This classification was made by the subsections (a) and (b), which are practically identical in

both sections, 6 and 7. (In 7 the word "petitioner" is substituted in place of "either party" used in 6 for the obvious reason that section 7 is dealing with cases where the defendant is out of the state and hence it can only be the petitioner who is a *bona fide* resident when the action is commenced. Even if defendant were still in the state but hiding, it would obviously be impossible as a practical matter to prove that he was still a resident.)

Subsection (a), then (in both 6 and 7), was simply the description of those cases in which everyone would agree the state should have jurisdiction, with the added requirement of the two years residence prior to suit, for the purpose of remedying the "migratory divorce" evil, and that added requirement having a special exception in the case of adultery for reasons which may be surmised but which are not of particular importance here. The point is, that the use of the word "continued" was not with the idea that such continued residence during the entire period between cause of action and commencement of suit, was in itself essential or important; but was a mere incident in the description of those cases as to which the propriety of the states exercising jurisdiction was conceded by all. The statute then proceeds to add, in subsection (b), additional cases in which the state should be permitted to exercise jurisdiction.

It is deemed therefore that the legislature had no intent to specify or intimate continuousness of residence as a general "necessity" or requisite of paramount importance; and that the exercise of jurisdiction in any and all cases coming within the wording of subsection (b) is not in any wise "defeating" any such supposed necessity.

The master's report, that the court has not jurisdiction over the cause of action as found by him to have been proven, must therefore be overruled.

The cause of action as found by him was a desertion from January, 1908, to January, 1910. The cause of action alleged in the petition was a desertion from 1927 to 1931. Doubtless the petitioner might have leave to amend, and an

order to show cause, as in *Succhierelli* v. *Succhierelli, 101 N. J. Eq. 30* (at *p. 37*) ; *137 Atl. Rep. 839.*

It would appear, however, that such further amendment is not necessary in the present instance. The discussion herein has so far been on the basis of a desertion period running from January, 1908, to January, 1910. The petition originally filed counted on a desertion from January, 1908 down to 1931. The amended petition (which was served with the citation), counts on a desertion from June, 1927, to 1929, during which time and ever since, down to the commencement of the suit, petitioner was a resident of New Jersey; on the case as alleged (and proven) therefore, this court would have jurisdiction under section 7a.

The proofs show that defendant's willful, obstinate and continued desertion extended from ·January, 1908, to the commencement of suit. The statute does not say that the only desertion period upon which a deserted spouse may rely as a cause of action is the two-year period immediately following the inception of the desertion; it says that divorce may be decreed for the cause of "willful, continued and obstinate desertion for the term of two years." *Prima facie* that would mean any two-year term of such desertion; although it is of course limited by the requirement of the proviso in 6 (b) and 7 (b) so that no two-year period during which the petitioner was a non-resident' could be counted on unless the same cause was recognized in the state of petitioner's residence.

The important and essential thing required by the provisions of the statute relating to jurisdiction, is that whatever be the cause for divorce sued on (except adultery) there must be a period of two years *bona fide* residence before suit is brought; and as to the cause of desertion, a two-year period of willful, continued and obstinate desertion, either in this state or in some other state recognizing a similar ground, is required to constitute ground for divorce.

There appears nothing from the standpoint of reason or justice (other than the limitation above mentioned) which should prevent the petitioner from relying on any two-year

period of desertion she may choose. The guilt of the offending spouse is of precisely the same nature and the same degree all through the entire desertion; and assuredly there is nothing in public policy which should lead toward the raising of any implication the result whereof would tend to induce deserted spouses toward suing for divorce immediately upon the end of two years of desertion.

Nor is it deemed that this view is contravened by the adjudications in this state.

In *Gordon* v. *Gordon, 89 N. J. Eq. 535; 105 Atl. Rep. 242*, it is laid down that a right to divorce becomes vested in the injured party upon the expiration of two years of statutory desertion. This, however, is a determination in favor of the injured party; it in nowise determines that such injured party shall not be allowed to waive the earlier portion of an entire desertion period, and count upon some other portion of two years duration.

In *Orcult* v. *Orcutt, 94 N. J. Eq. 303; 119 Atl. Rep. 377*, Vice-Chancellor Backes expressly holds that "proof of the date of the commencement of the desertion is unimportant if two years of willful, continued and obstinate desertion is established."

In *Stephenson* v. *Stephenson, supra*, there was a period of "desertion" (*i. e.*, of that which would have been desertion had the parties resided in this state), from 1906 to 1925 or 1926. During the time from 1906 to 1919 the parties lived in New York; from 1919 to the commencement of suit they lived in New Jersey. It was held that the petitioner was entitled to divorce for the desertion in this state subsequent to 1919.

It is true that the *Stephenson Case* can scarcely be deemed a square authority in favor of the view in the instant case (although it is clearly not *contra* thereto), because of the *dictum* therein to the effect that there was no (actionable) desertion until the parties came to New Jersey in 1919, for the reason that desertion is not a cause for divorce in New York. However, it seems evident from the *Stephenson* opinion that *Light* v. *Light, 95 N. J. Eq. 779; 124 Atl. Rep.*

*448,* and *Buckley* v. *Buckley, 95 N. J. Eq. 783; 124 Atl. Rep. 605,* are no longer expressive of the law in this state on the point.

Mention should also be made of another *dictum* in the *Stephenson Case* which is perhaps susceptible of ambiguous interpretation. It is there stated (with reference to subsection (a) of section 6 of the statute) that "the legislature in using the term, viz., 'when, at the time the cause of action arose either party was a *bona fide* resident of this state,' &c., clearly refers to the time the *act of desertion* took place, and not to a time when such desertion became a cause of action for divorce," &c. It is possible to construe the words "act of desertion" as meaning the act commencing the desertion, instead of meaning the entire act of desertion constituting the cause of action; but it seems clear, upon consideration, that the latter is not only the more natural meaning, but the one which was intended.

The learned justice was there considering the provisions of the statute relating to jurisdiction—subsections (a) and (b), the latter of which deals with those cases in which jurisdiction may be had on the basis of residence acquired *after* the arising, *i. e.,* "occurrence," of the facts constituting, or alleged to ' constitute, the cause of action sued on, and the former of which deals with those cases in which jurisdiction is accorded on the basis of residence in this state *at the time of* the arising, *i. e.,* "occurrence" of the facts relied on as cause for divorce.

The causes for divorce in this state then were (and still are) three: adultery, desertion and extreme cruelty. Adultery is usually a single act, referable to a single day, so that there is scarcely room for doubt or difficulty as to whether there is residence in this state at the time that cause of action arises or occurs. Extreme cruelty may be a single act or a course of conduct occupying considerable time. The "act of desertion," as a cause of action under our statute is obviously an act occupying two years in its occurrence; and the learned justice is pointing out that under the terms of subsection (a), in order that jurisdiction may be had on the

basis of residence in this state at the time the cause of action arose, there must be such residence during the entire time occupied by the taking place of the act of desertion, and not merely at the end of the two-year period when the continued desertion ripens into and becomes a completed cause of action. In one sense the cause of action for desertion arises at the latter time, because it has not arisen until that time; but in another sense (and this is the sense in which the legislature there uses it, as the court point out) the time of the arising of the cause of action for desertion is the entire time that a two-year "act of desertion" is taking place.

The same thing is of course true as to the cause of action of extreme cruelty, where that which is relied on as extreme cruelty is a course of conduct the occurrence of which during one or two days would not be, but the continuance of which for a period of some length would be, sufficient to constitute extreme cruelty.

In the instant case, *a* desertion period, of the statutory character and of more than the required two years duration, arose after the petitioner returned to this state, during the entire continuance of which, and on down to the commencement of suit, petitioner was a *bona fide* resident of New Jersey. That desertion period comes within the statutory provisions as a cause of action for which absolute divorce may be decreed, and of which this court has jurisdiction. That desertion was alleged in the amended petition and established by the proofs.

It is therefore deemed that the exceptions should be sustained, and that the petitioner is entitled to decree for the cause of action as alleged.